IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEVERT J. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:15-CV-25-NJR-DGW |
| | ) |
| DONALD GAETZ, CHRISTINE BROWN, | ) |
| and VIPIN SHAH, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Levert J. Jones, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his Eighth Amendment rights were violated while he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). More specifically, Jones alleges that prison and medical personnel at Pinckneyville denied him surgery for removal of his colostomy bag.

Following a screening of the complaint pursuant to 28 U.S.C. § 1915A, Jones was allowed to proceed on a deliberate indifference claim against Dr. Vipin Shah, Pinckneyville Nursing Director Christine Brown, and the former Pinckneyville Warden, Donald Gaetz.

This matter is currently before the Court on the motions for summary judgment filed by Defendant Dr. Shah (Doc. 65) and Defendants Gaetz and Brown (Doc. 76). The Court has considered the briefs and all of the evidence submitted by the parties and, for the reasons set forth below, the Motion for Summary Judgment filed by Defendant Dr. Shah is denied, and the Motion for Summary Judgment filed by Defendants Gaetz and Brown is granted.

## FACTUAL BACKGROUND

The claims in this matter stem from an incident on June 23, 2013, in which Jones was shot in the back by a security guard during a "snatch and grab" attempt (Doc. 66-3, p. 11). The bullet entered Jones's body in the right lower quadrant (at the pubic bone) and exited above his left buttock in his lower back (Doc. 66-2, ¶13; Doc. 66-5, p. 1). Jones was taken to Advocate Good Samaritan Hospital ("Good Samaritan Hospital") and underwent emergency surgery, which entailed a small bowel and sigmoid resection, appendectomy, proctoscopy, and formation of a colostomy (Doc. 66-2, ¶13; *see* Doc. 66-5, pp. 1-2). Jones claims he was told by his surgeon following surgery that he should return in three to six months for a colostomy reversal surgery, because his colostomy was not permanent (Doc. 66-3, pp. 13-14; Doc. 75, p. 13, ¶9). There are no notations, however, regarding any required follow-up procedure or follow-up instructions in the records from Good Samaritan Hospital (*see generally* Doc. 66-5).

Jones was discharged from Good Samaritan Hospital on June 28, 2013, and he was held at DuPage County Jail until he was placed into IDOC custody at Stateville Correctional Center ("Stateville") on December 12, 2013 (Doc. 66-2, ¶¶14-15; Doc. 66-3, pp. 14-15). Approximately one month later, Jones was transferred from Stateville to Centralia Correctional Center ("Centralia") (Doc. 66-3, p. 30; *see* Doc. 66-7, p. 1). Dr. Venerio Santos, the Medical Director at Centralia, requested copies of Jones's medical records from Good Samaritan Hospital on at least two occasions (*see* Doc. 66-8; Doc. 66-9).[1] It is not clear when (or if) the records were ever sent (or received). On August 25, 2014, however, Dr. Santos

---

[1] Jones was transferred to Stateville for a brief period of time between Dr. Santos's first request on May 21, 2014, and his second request on July 30, 2014.

requested a consult for a colostomy reversal, and the procedure was denied on September 2, 2014, by Dr. Garcia "during collegial discussion with Dr. Santos" (*see* Doc. 66-7, pp. 5-6).

Jones was transferred to Pinckneyville on September 9, 2014 (Doc. 66-2, ¶16; Doc. 66-3, p. 10; *see* Doc. 66-7, p. 7). On September 24, 2014, Jones was seen by a nurse and referred to a physician about having a colostomy reversal (Doc. 66-2, ¶18; *see* Doc. 66-7, p. 8). Defendant Dr. Shah saw Jones on September 26, 2014, and noted that the wound surrounding Jones's stoma for his colostomy bag was clean (Doc. 66-2, ¶19; *see* Doc. 66-7, p. 9). The Court is unable to decipher any of Dr. Shah's other notes from this appointment (*see* Doc. 66-7, p. 9), but Jones attests that he told Dr. Shah that his surgeon indicated his colostomy "could and should" be reversed in three to six months (Doc. 75, p. 14, ¶16).

Jones testified that Defendant Dr. Shah was "[t]he most person I ever talked to" regarding his request for a colostomy reversal and indicated that Dr. Shah told him that "unless it's an emergency, we cannot do it" (Doc. 66-3, p. 18). Defendant Dr. Shah attests that during the time he has treated Jones, the colostomy site has remained stable and asymptomatic, and it is functioning with no problems (Doc. 66-2, ¶20). There are no other medical records before the Court, however, which reflect any further examinations of Jones's colostomy by Dr. Shah. Dr. Shah further attests that the records from Jones's surgeon do not indicate that the colostomy could be reversed, and most colostomies are permanent (*Id.* at ¶¶21-25). There is also no medical indication that a reversal of Jones's colostomy is necessary at this time and, as such, the procedure would be considered elective (*Id.*). Jones attests, however, that his colostomy causes frequent abdominal pain, and it has led to significant weight gain, high blood pressure, and severe mental anguish, including depression and

anxiety (Doc. 66-3, pp. 19, 32; Doc. 75, p. 15, ¶19). Jones also indicates that he has been told that if he has the colostomy too long, it will become permanent (Doc. 66-3, p. 25).

In addition to complaining about his colostomy and seeking a reversal from Dr. Shah, Jones also asserts that he wrote letters and grievances to Defendant Gaetz, and he spoke with Gaetz a couple of times, informing him that he needed a colostomy reversal and the medical personnel at Pinckneyville were not doing their jobs (Doc. 66-3, pp. 21-23). Defendant Gaetz never responded to Jones's letters or grievances and never followed up after he lodged his oral complaints (*Id.* at pp. 23-24). Jones could not definitively recall if he wrote any letters to Christine Brown, nor could he remember when he sent the letters; he also did not provide any testimony about the contents of the supposed letters (*Id.* at pp. 25-26). But Brown is the Director of Nursing at Pinckneyville, and Jones regularly informed the nurses that he needed a colostomy reversal (*Id.* at pp. 25-26). Jones also attests that Brown would have received his request slips seeking a colostomy reversal, but ignored his complaints (Doc. 82, p. 1, ¶1).

**LEGAL STANDARDS**

**<u>Summary Judgment Standard</u>**

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is appropriate where the admissible evidence shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. A "material fact" is one identified by the substantive law as affecting the outcome of the suit. A "genuine issue" exists with respect to any such material fact . . . when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." On the other hand, where the factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is nothing for a jury to do. In determining whether a genuine issue of material fact exists, we view the

record in the light most favorable to the nonmoving party.

*Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 681 (7th Cir. 2014) (citations omitted).

**Eighth Amendment Deliberate Indifference**

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on a claim for deliberate indifference to a serious medical need, there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). First, the plaintiff must demonstrate that his medical condition was "objectively, sufficiently serious." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). A serious medical need includes "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; . . . a medical condition that significantly affects an individual's daily activities; or . . . chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

Second, a plaintiff must demonstrate that the "prison officials acted with a sufficiently culpable state of mind," namely deliberate indifference. *Greeno*, 414 F.3d at 653. To do so, a plaintiff must put forth evidence that the prison officials knew that the prisoner's medical condition posed a serious risk to the prisoner's health, and they consciously disregard that risk. *Holloway*, 700 F.3d at 1073. "This subjective standard requires more than

negligence and it approaches intentional wrongdoing." *Id.*; *accord Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Deliberate indifference is intentional or reckless conduct, not mere negligence."); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("[N]egligence, even gross negligence does not violate the Constitution."). A plaintiff does not have to prove that his complaints were "literally ignored," however, but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

## DISCUSSION

Defendants Shah, Gaetz, and Brown all assert that they are entitled to judgment as a matter of law. The Court will first address whether Jones has an objectively serious medical need, and then address each defendant's subjective state of mind.

**1. Serious Medical Need**

Dr. Shah contends that summary judgment in his favor is appropriate because Jones has failed to provide any evidence or testimony that he has a serious medical need. Dr. Shah urges the Court to accept his (rather inarticulate) argument that Jones's colostomy does not qualify as such because it was functioning with no problems, and Jones's complaints were limited to stomach pain and abnormal bowel movements. The doctor's argument misses the mark.

As set forth above, a serious medical need is one that is "worthy of comment or treatment" or "significantly affects an individual's daily activities" *Hayes*, 546 F.3d at 522-23 (quotation omitted). A colostomy is when one end of an individual's large intestine is brought through a surgically-created hole to the outside of the abdomen and stitched down

in order to allow the individual's fecal matter to drain into a bag attached to the individual's body.[2] Obviously, there are risks inherent in a colostomy, including but not limited to, irritation, infection, and herniation. Without a doubt, a colostomy requires a doctor's attention on occasion and significantly affects an individual's daily activities. *See Williams v. Erickson*, 962 F.Supp.2d 1038, 1042 (N.D.Ill. 2013) (concluding that daily management of a colostomy bag constitutes a serious medical need). Jones also has asserted that his colostomy causes frequent abdominal pain, and it has led to significant weight gain, as well as high blood pressure and severe mental anguish, including depression and anxiety, conditions which may be deemed serious medical needs that require a doctor's attention. Accordingly, the Court finds that Jones's colostomy constitutes a serious medical need.

### 2. Deliberate Indifference—Dr. Shah

Dr. Shah contends that summary judgment in his favor is appropriate because there is no evidence that he was deliberately indifferent in his treatment of Jones's colostomy and his handling of his request for a reversal procedure. The doctor claims that his examinations of Jones's colostomy site revealed that it is stable and asymptomatic, and therefore, a reversal would be considered an elective procedure. Consequently, Defendant Dr. Shah characterizes Jones's complaints as mere disagreements with his treatment decisions, which he asserts is not sufficient to state a claim for deliberate indifference.

Prisoners are not entitled to receive "unqualified access to healthcare"; instead, they are only entitled to "adequate medical care." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citations omitted). Furthermore, "[t]here is not one 'proper' way to

---

[2] Colostomy, JOHNS HOPKINS MEDICINE,
http://www.hopkinsmedicine.org/healthlibrary/test_procedures/gastroenterology/colostomy_92,p07727/
(last visited Mar. 26, 2017).

practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field." *Id.* (quoting *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008)). It is well-established that "[a] prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment was 'blatantly inappropriate'." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Greeno*, 414 F.3d at 654). Federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Holloway*, 700 F.3d at 1073 (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). A physician's treatment decision is based on professional judgment if it is fact-based with respect to the particular inmate, the severity and stage of his condition, the likelihood and imminence of further harm, and the efficacy of available treatments. *Roe v. Elyea*, 631 F.3d 843, 860 (7th Cir. 2011) (citing *Collingon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998) ("A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances.")).

When viewing the evidence before the Court in the light most favorable to Jones and drawing all inferences in his favor, the Court finds there is a question of fact as to whether Dr. Shah exercised his professional judgment with regard to Jones's request for colostomy reversal. Indeed, the record is bereft of any evidence that Dr. Shah actually considered Jones's request despite Jones's protestations that his surgeon indicated his colostomy could and should be reversed. The only medical record pertaining to Jones's colostomy indicates

simply that the wound surrounding his stoma was clean. And while Dr. Shah submitted an affidavit indicating that he reviewed the records from Jones's surgeon, he did not indicate when that review took place. And that review is not memorialized in any fashion in the medical records. Dr. Shah also did not address whether he reviewed Jones's medical records from the IDOC prior to denying his request for a colostomy reversal. Notably, Dr. Santos at Centralia sought a referral for a colostomy reversal, which suggests the procedure was possible and could have, or should have, been considered. Finally, there is simply no evidence before the Court that Jones's colostomy is permanent. Indeed, Defendant Shah attests there are various factors that determine whether a colostomy may be reversed, including how much bowel remains and whether the patient has any co-morbidities that would be a contraindication for surgery. But Dr. Shah does not indicate how these factors apply to Jones.

In sum, there is no evidence that Dr. Shah made any effort to investigate the nature of Jones's colostomy or whether a colostomy reversal was possible. Consequently, a reasonable factfinder could conclude that Dr. Shah's decision not to pursue a colostomy reversal for Jones was not "fact-based" or based on professional judgment, and therefore, Dr. Shah acted with deliberate indifference. As such, Defendant Dr. Shah is not entitled to judgment as a matter of law.

### 3. Deliberate Indifference—Warden Donald Gaetz

Defendant Gaetz asserts he is entitled to judgment as a matter of law because the record is not sufficient to establish that he had the requisite personal involvement to hold him liable under Section 1983. More specifically, Defendant Gaetz explains that he could not

be personally responsible for the constitutional deprivations alleged in Jones's complaint because he was not the Warden at Pinckneyville during Jones's incarceration there.

Liability under Section 1983 is predicated on a defendant's personal involvement in the alleged constitutional violation. *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003) (citations omitted). To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (quoting *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006). Notably, according to the affidavit of Dessie Staley, an Executive Secretary III working directly for the Warden of Pinckneyville since March 2000, Defendant Gaetz was the Warden at Pinckneyville from December 2, 2011 to September 30, 2013 (Affidavit of Dessie Staley, Doc. 77-2, ¶¶ 1-3). Jones was not transferred to Pinckneyville, however, until September 9, 2014. If Defendant Gaetz was not physically at Pinckneyville at the time of Jones's incarceration, then he could not possibly have been personally involved in Jones's alleged constitutional deprivation.

In his response to Defendant Gaetz's motion for summary judgment, Jones does not address this glaring issue with his claim against this defendant (*see* Docs. 80 and 82). While ordinarily a district court is not to evaluate the credibility or persuasiveness of evidence at the summary judgment stage, "a court is not required to stand helpless just because a litigant tenders something that *purports* to create a disputed factual issue." *United States v. Kitsos*, 770 F.Supp. 1230, 1237 (N.D. Ill. 1991). Indeed, the Supreme Court has held that "[i]f the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citation omitted). Other courts have indicated that "even on summary judgment the district court should not credit

testimony that is inherently incredible," *Simms v. Reiner*, 419 F.Supp. 468, 475 (N.D. Ill. 1976), or "irrefutably contradicted by documentary evidence," *Stewart v. RCA Corp.*, 790 F.2d 624, 628 (7th Cir. 1986), such as Jones's testimony here with regard to Defendant Gaetz. Given the indisputable evidence that Defendant Gaetz left his position as the Warden at Pinckneyville almost a year before Jones arrived there, the Court finds that Jones's testimony describing the complaints he made to Defendant Gaetz is "inherently incredible."

Without any other evidence to support his version of events, no reasonable factfinder could find for Jones. Consequently, Defendant Gaetz is entitled to judgment as a matter of law on Jones's claim of deliberate indifference, and he shall be dismissed from this action with prejudice.

4. **Deliberate Indifference—Christine Brown**

Defendant Brown also contends that she is entitled to judgment as a matter of law, because the record fails to support a finding of personal involvement in Jones's alleged constitutional deprivations. The Court agrees. While personal involvement can be somewhat broad, including those who "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye," *Knight*, 590 F.3d at 463 (quotation omitted), there is no evidence in the record, even when viewing it in the light most favorable to Jones, that Defendant Brown was notified of, or had some involvement in, denying Jones's colostomy reversal request.

At his deposition, Jones indicated that he named Defendant Brown in this lawsuit because he had been "telling the nurses [he needed a colostomy reversal]" upon his arrival at Pinckneyville and he heard "she was over the staff" (Doc. 66-3, p. 25). But this testimony does not indicate that Brown caused or participated in the constitutional deprivation. Instead, this testimony suggests Jones is trying to hold Brown liable simply by virtue of her

position. But Section 1983 "does not establish a system of vicarious responsibility." *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009).

Jones also testified that he never had any conversations with Defendant Brown about his condition, but he may have sent her letters (Doc. 66-3, p. 26). He could not remember when the letters were sent, however, and he did not provide any information on the contents of the letters. This amounts to nothing more than "a scintilla of evidence," which is insufficient to defeat summary judgment, because no reasonable jury could find in his favor based on this evidence alone. *Black Agents & Brokers Agency, Inc. v. Near N. Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005) ("The production of only a scintilla of evidence, however, is insufficient to defeat a summary judgment motion." (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986))); *Szymanski v. Rite-Way Lawn Maint. Co.*, 231 F.3d 360, 364 (7th Cir. 2000) ("[A] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion."); *Dale v. Lappin,* 376 F.3d 652, 655–56 (7th Cir. 2004) (Jones who offered concrete details in a sworn statement submitted enough to defeat summary judgment, whereas vague assertions are not sufficient to create a genuine issue of fact).

Finally, in response to Defendant Brown's motion for summary judgment, Jones explains that Brown would have received his request slips wherein he sought a colostomy reversal and, as such, she had knowledge of what was taking place (Doc. 82, p. 1). This argument is pure speculation, which is insufficient to survive a motion for summary judgment. *Stephens v Erickson*, 569 F.3d 779, 786 (7th Cir. 2009); *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003).

While the Court is mindful of Jones's argument, he has failed to provide sufficient evidence for a reasonable jury to conclude that Defendant Brown had notice of Jones's complaints regarding his colostomy and request for a reversal procedure. The medical records include no documentation concerning Defendant Brown and the Offender Requests attached to his responses to Defendant's motion were submitted prior to his incarceration at Pinckneyville (Docs. 80 and 82). For these reasons, Defendant Brown is entitled to judgment as a matter of law on Jones's claim of deliberate indifference, and she shall be dismissed from this action with prejudice.

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment filed by Defendant Dr. Vipin Shah (Doc. 65) is **DENIED**, and the Motion for Summary Judgment filed by Defendants Donald Gaetz and Christine Brown (Doc. 76) is **GRANTED**. Defendants Donald Gaetz and Christine Brown are **DISMISSED with prejudice**.

The only claim remaining in this lawsuit is Plaintiff's deliberate indifference claim against Defendant Dr. Vipin Shah. By separate order, counsel will be recruited to assist Jones at trial.

**IT IS SO ORDERED.**

**DATED:   March 27, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**